630 F.2d 1164
 23 Fair Empl.Prac.Cas. 118,
23 Empl. Prac. Dec. P 31,018
AIR LINE STEWARDS AND STEWARDESSES ASSOCIATION, LOCAL 550,
et al., Plaintiffs-Appellees,
v.
TRANS WORLD AIRLINES, INC., Defendant,
Independent Federation of Flight Attendants, Intervening
Defendant-Appellant,
Anne B. ZIPES, et al., Plaintiffs-Appellees,
v.
AIR LINE STEWARDS AND STEWARDESSES ASSOCIATION, et al., Defendants,
Independent Federation of Flight Attendants, Intervening
Defendant-Appellant.
 Nos. 79-2460, 79-2465.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 22, 1980.
Decided June 13, 1980.
 
 Steven A. Fehr and William A. Jolley, Kansas City, Mo., for intervening defendant-appellant.
 Kevin M. Forde, Aram A. Hartunian, Chicago, Ill., for plaintiffs-appellees.
 Before FAIRCHILD, Chief Judge, and SWYGERT and BAUER, Circuit Judges.
 FAIRCHILD, Chief Judge.
 
 
 1
 The issue in this appeal is whether the district court properly approved a settlement agreement terminating almost a decade of litigation regarding the claims of the plaintiffs that defendant TWA's policy between 1965 and 1970 of terminating female flight attendants who became mothers was sex discrimination in violation of plaintiffs' rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The Independent Federation of Flight Attendants (IFFA), the union representing currently employed TWA flight attendants, has intervened in this action and is the appellant here. IFFA asserts that the district court lacked subject matter jurisdiction necessary for it to approve the settlement, that the district court applied an improper standard in approving the settlement including its terms regarding retroactive seniority, and that the settlement violates several statutes. We conclude that the district court acted properly and affirm.
 
 
 2
 The original complaint in this litigation was filed August 8, 1970. An initial settlement of the class action against the employment practices of American Airlines and TWA was approved by the district court in 1972 but the order was reversed by this court the following year. Air Line Stewards & Stewardesses Ass'n, Local 550 v. American Airlines, Inc., 490 F.2d 636 (7th Cir. 1973), cert. denied sub nom. Air Line Stewards & Stewardesses Ass'n, Local 550 v. Zipes, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974). American Airlines and the plaintiffs reached a settlement of their dispute and the district court's approval of that settlement was affirmed by this court. Airline Stewards and Stewardesses Ass'n, Local 550 v. American Airlines, Inc., 573 F.2d 960 (7th Cir.) (hereinafter "American Airlines II"), cert. denied sub nom. Association of Professional Flight Attendants v. Airline Stewards & Stewardesses Assn., Local 550, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978). In the suit against TWA, the district court entered a summary judgment in favor of all the class members. This court upheld the summary judgment but found that approximately 92% of the plaintiffs' claims were jurisdictionally barred for failure of those plaintiffs to have filed charges of discrimination with the EEOC within 90 days after the alleged unlawful employment practice occurred.[1] The district court's order was vacated and the action remanded to the district court for further proceedings. In re Consolidated Pretrial Proceedings in the Airline Cases, 582 F.2d 1142 (7th Cir. 1978). The mandate of this court was stayed. Both the plaintiffs' class and TWA filed petitions for certiorari ; at the request of the petitioners, the Supreme Court on June 4, 1979, granted a motion to defer consideration of the certiorari petitions pending completion of settlement proceedings in the district court. The parties arrived at a settlement, for which approval by the district court was required pursuant to Federal Rule of Civil Procedure 23(e), and presented it to the district court in June, 1979. Under its terms women who were discharged or had children within 90 days of the filing of the EEOC charge, or who were reinstated in a ground position and served in that position within the 90-day period, (hereinafter designated Subclass A), shall receive a pro rata share of $1.5 million. Another $1.5 million is to be divided among the larger class (Subclass B) who were discharged earlier the class whose claims this court had found to be jurisdictionally barred. All the women affected by the airline's no-motherhood policy would be offered reemployment and full company seniority, subject to certain conditions. The district court was given the power to determine the amount of competitive (union) seniority to grant to each woman. The union representing current TWA personnel who might be affected by this settlement, IFFA, was allowed to intervene to challenge the proposed settlement. The court held a hearing on objections to the proposed settlement.
 
 
 3
 The proposal was estimated to create applications for re-employment from 33 members of Subclass A and 172 members of Subclass B. TWA employs in excess of 6,000 flight attendants. A deposition, admitted into evidence at the hearing, of TWA vice president David J. Crombie indicated that in a normal year the airline hires between 400 and 800 new flight attendants.
 
 
 4
 The district court overruled IFFA's objection to its jurisdiction to consider the proposed settlement and approved the settlement. Regarding jurisdiction, it reasoned that it was not bound by this court's ruling regarding the jurisdictional bar to the claims of Subclass B because of the absence of the issuance of the mandate of this court. The settlement was approved as "fair, reasonable, and adequate for the parties and Subclasses A and B." The court dismissed the action before it and another related action, as proposed by the parties, retaining jurisdiction to determine the question of union seniority, to enforce the terms of the settlement, and to determine attorneys' fees and costs. The district court approved the award of "full restoration of retroactive seniority . . . (as not having) an unusual adverse impact upon currently employed flight attendants in a manner which is not typical of other Title VII cases...."
 
 
 5
 Federal courts look with great favor upon the voluntary resolution of litigation through settlement. Metropolitan Housing Development Corp. v. Village of Arlington Heights, 616 F.2d 1006 at 1013 (7th Cir. 1980). This rule has particular force regarding class action lawsuits. Armstrong v. Board of School Directors of the City of Milwaukee, 616 F.2d 305 at 312 (7th Cir. 1980). District court approval of a class action settlement is appropriate when the district court finds the settlement to be fair, reasonable, and adequate. Id. at 313. Such a determination will be reversed on appeal only upon a "clear showing that the (district) court abused its discretion." Id. at 313 (citing Dawson v. Pastrick, 600 F.2d 70, 75 (7th Cir. 1979); E. E. O. C. v. American Telephone & Telegraph, 556 F.2d 167, 174 (3d Cir. 1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3145, 57 L.Ed.2d 1161 (1978).
 
 
 6
 IFFA contends first that the district court lacked subject matter jurisdiction over the claims of Subclass B, as a result of this court's decision in In re Consolidated Pretrial Proceedings in the Airline Cases, 582 F.2d 1142 (7th Cir. 1978). There does not appear to be any dispute over the district court's jurisdiction over the lawsuit as to Subclass A. Thus IFFA argues that once this court had found subject matter jurisdiction to be lacking as to Subclass B, the district court could not approve a settlement granting any benefit to the members of Subclass B.
 
 
 7
 We have previously considered and rejected a similar claim in a lawsuit related to this case. In Airline Stewards and Stewardesses Ass'n, Local 550 v. American Airlines, Inc., 573 F.2d 960 (7th Cir. 1978), this court affirmed the district court's approval of a settlement, similar to that involved in the present action, between American Airlines and former flight attendants affected by American's no-motherhood policy. The representative of American's current flight attendants, the Association of Professional Flight Attendants (APFA), as intervenor objected to the settlement on the ground that the court should have determined whether each of the members of the plaintiff class had a claim not time-barred by the EEOC 90-day filing requirement and then refused benefits from the settlement to any class member whose claim was so barred. This court rejected that objection:
 
 
 8
 While we believe that in a controverted Title VII case the issues raised by intervenor would be both difficult and interesting, we must recognize that we are here reviewing the propriety of a settlement and not a judgment rendered after a trial. We believe that the issues raised by the intervenor should not be decided on the basis of Title VII law, but rather must be decided on the basis of legal principles regulating judicial review of settlement agreements.
 
 
 9
 (S)ettlements are entered into because of "the very uncertainties of outcome in litigation, as well as the avoidance of wasteful litigation and expense . . . ." Florida Trailer & Equipment Co. v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). Based on these considerations, this court has held that a district court in reviewing a settlement agreement "should not attempt to decide the merits of the controversy . . . (because) (a)ny virtue which may reside in a compromise is based upon doing away with the effect of such a decision." Patterson v. Stovall, 528 F.2d 108, 114 (7th Cir. 1976). 573 F.2d at 963.
 
 
 10
 There are clearly some differences between the situation in American Airlines II and that presently before us. In the earlier case, a determination about jurisdiction as to each plaintiff would have required the district court to hold "in excess of 100 mini-trials," a process so time-consuming that the benefit of speedy resolution of a dispute provided by a settlement would have been eliminated. In the present case, barring relief to all the members of Subclass B would be a much simpler and less time-consuming task for the district court. In American Airlines II, the settlement avoided litigation of the jurisdictional question. Here, that issue has already been litigated in the district and appeals court.
 
 
 11
 The overriding principle behind the decision in American Airlines II is, nevertheless, equally applicable here. There is a crucial issue, that of jurisdiction as to Subclass B, which has not been finally determined because a challenge to our decision is still pending before the United States Supreme Court. Both parties to the settlement believed it in their interests to approve the settlement rather than await the action of the Supreme Court. Not only does their compromise reflect their perception that the ultimate resolution of this issue could not be predicted with certainty, but prior case law also left the law on this matter open to question.
 
 
 12
 The Supreme Court has not decided whether the time requirements for filing charges with the EEOC define the courts' subject matter jurisdiction as this court has held, or whether the filing requirement should be treated as a statute of limitation, in which case the doctrines of waiver and estoppel would apply. The courts of appeals are split on this issue.[2] The uncertainty of the outcome on this issue before the Supreme Court was considered by the district court to be a major factor leading the parties to reach this settlement, to avoid "the plaintiff class and T.W.A. being forced against their will to continue a legal battle before the Supreme Court in a winner-take-all contest which neither party desires to risk." Slip op. at 3 (N.D.Ill., Sept. 14, 1979). We do not share the view, under the circumstances of this case, that the parties' agreement is tantamount to an attempt to confer subject matter jurisdiction by consent.
 
 
 13
 Intervenors urge that this court reverse the approval of the settlement order on the basis of the Fifth Circuit's ruling in McArthur v. Southern Airways, 569 F.2d 276 (5th Cir. 1978) (en banc ). McArthur involved the district court's approval of a settlement between Southern Airways and female flight attendants who alleged that the airline violated Title VII as a result of policies forbidding the employment of married or pregnant stewardesses. Subsequent to the settlement approval, 404 F.Supp. 508 (N.D.Ga.1975), the United States Supreme Court decided United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), which held that "(a) discriminatory act which is not made the basis for a timely charge . . . has no present legal consequences" and does not create a continuing violation unless a present violation exists. Id. at 558, 97 S.Ct. at 1889. Because no plaintiff in McArthur had made a timely filing with the EEOC nor were there continuing violations under the Evans standard, the court of appeals reversed the settlement approval on the ground that the district court had lacked jurisdiction over the action and therefore had no authority to approve the settlement. 569 F.2d at 277.
 
 
 14
 The instant action may be distinguishable from McArthur. In McArthur there was found to be no subject matter jurisdiction at the time of approval of the settlement but here the district court clearly had subject matter jurisdiction over the claims of eight per cent of the plaintiff class. In any event, we decline to adopt the McArthur rule.[3] We think the principles favoring settlement of class action lawsuits remain the same regardless of whether the disputed legal issues center on the jurisdiction of the court over the action. Where, as here, the jurisdictional question is not settled with finality, parties should not be forced to litigate the issue of jurisdiction if they can arrive at a settlement that is otherwise appropriate for district court approval.
 
 
 15
 In deciding whether the proposed settlement was "fair, reasonable and adequate," the district court was required to consider whether the class members were properly represented by their representatives. The settlement granted significant awards of money, job reinstatement, and seniority to members of the class, none of whose members have made any objection to the settlement. The court also was required to consider the effects of the settlement on the interests of the public as a whole and upon other parties such as the intervenors in this action. We have been presented with no argument that this settlement harms the public as a whole and we note that the settlement serves the public policy of remedying past acts of sex discrimination and the consequences of those past acts. The court recognized the right of the intervenor to present its objections to the court before it would decide whether to approve the proposed settlement. American Airlines II, 573 F.2d at 961. The right to have its objections heard does not, of course, give the intervenor the right to block any settlement to which it objects. The district court was presented with a settlement proposal including reinstatement rights for class members numbering about three per cent of the total flight attendants represented by IFFA. Testimony indicated that providing positions for these reinstated attendants would normally be possible as a result of normal attrition of workers in less than half a year. The agreement provided that no currently employed attendant would be required to lose employment in order to accommodate a reinstated attendant. The Supreme Court in Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) held that granting of retroactive seniority is ordinarily appropriate in Title VII cases:
 
 
 16
 (D)istrict courts should take as their starting point the presumption in favor of rightful-place seniority relief, and proceed with further legal analysis from that point; and that such relief may not be denied on the abstract basis of adverse impact upon interests of other employees but rather only on the basis of unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases. Id. at 780, 96 S.Ct. at 1271.
 
 
 17
 The district court found that full restoration of union seniority to reinstated class members would not have an unusual adverse impact on currently employed flight attendants.
 
 
 18
 Examining the district court's actions in approving the settlement agreement and in granting retroactive seniority, we find no abuse of discretion. We have considered the other arguments made by the appellant and find them to be without merit.
 
 
 19
 The judgment appealed from is AFFIRMED.
 
 
 
 [1]
 The 90-day requirement was contained in 42 U.S.C. § 2000e-5(d) (1970). The section has been changed subsequently to extend the time limit to 180 days and was renumbered § 2000e-5(e)
 
 
 [2]
 Several courts have found compliance with the time requirement for filing charges of Title VII violations to be a jurisdictional prerequisite. In Re Consolidated Pretrial Proceedings in the Airline Cases, 582 F.2d 1142 (7th Cir. 1978) ("(W)e find nothing of significance to indicate that the 90-day filing requirement is not jurisdictional." Id. at 1151); McArthur v. Southern Airways, Inc., 569 F.2d 276 (5th Cir. 1978) (en banc ) ("Since no plaintiff in this cause made a timely filing with the Equal Employment Opportunity Commission (EEOC), the district court should have dismissed this cause for lack of jurisdiction." Id. at 277); Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) ("(T)he timely filing requirements with respect to EEOC appears to be a jurisdictional prerequisite to court action under Title VII." Id. at 246 (quoting Macklin v. Spector Freight Systems, Inc., 478 F.2d 979, 986 (D.C. Cir. 1973)); Hinton v. CPC International, Inc., 520 F.2d 1312, 1315 (8th Cir. 1975)
 Other courts of appeal have treated the requirement as a statute of limitations subject to equitable considerations. Laffey v. Northwest Airlines, Inc., 567 F.2d 429 (D.C. Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978), ("(T)he time provisions of Title VII are subject to equitable modification. Nothing in the legislative history compels us to treat those provisions as jurisdictional." Id. at 475); Hart v. J. T. Baker Chemical Corp., 598 F.2d 829 (3d Cir. 1979) ((T)he 180-day period is not jurisdictional." Id. at 831).
 
 
 [3]
 This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing en banc on the question of our declining to follow McArthur