Doris WHITEHEAD, Plaintiff–Appellee,

v.

RELIANCE INSURANCE COMPANY,
Defendant–Appellant.

No. 79–1169.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1980.

Lawrence B. Fine, Mark S. Dichter, Philadelphia, Pa., for defendant–appellant.

Gordon R. Cooper, II, Houston, Tex., for plaintiff–appellee.

Before TUTTLE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge: ·

Defendant–Appellant Reliance Insurance Company ("Reliance") brings this interlocutory appeal from an adverse ruling in the court below on its motion to dismiss Plaintiff–Appellee Doris Whitehead's Title VII suit for lack of jurisdiction. The sole question on appeal is whether the Equal Employment Opportunity Commission's administrative closure of a timely complaint of employment discrimination in response to the complaining party's request to withdraw the complaint effectively bars the complaining party from later bringing suit in federal court. We affirm the ruling of the district court in denying the motion to dismiss.

I. FACTUAL BACKGROUND LEADING TO THIS APPEAL

A. *The Facts Evident From the Record*

Mrs. Doris Whitehead, a white female, claims that her employer, Reliance, discriminated against her on account of her sex. The alleged incident occurred in February 1977. On March 7, 1977—within about three weeks of the allegedly discriminatory act—she filed with the Equal Employment Opportunity Commission (EEOC) a charge that stated:

I believe that Reliance Insurance Company has discriminated against me because of my sex, Female, by denying me a promotion to supervisor of Personal Lines. I have worked in the insurance field since September 1969. A male with three years in the insurance field was awarded the position.

Reliance management personnel immediately met with Mrs. Whitehead, and the parties reached an agreement that was satisfactory to her. The EEOC did not participate in these negotiations and was not a party to the settlement; so far as can be determined from the record, it had not yet begun an investigation of the charge. According to Mrs. Whitehead's deposition testimony, she telephoned the EEOC to inquire about the procedure for withdrawing a charge, and was told by an EEOC employee that she would have to submit a request on an EEOC form; this same EEOC employee, however, told her unequivocally that she could reactivate the charge at any time after requesting its withdrawal.

In response to her call, the EEOC sent Mrs. Whitehead a preprinted form that was entitled "Request for Withdrawal of Charge of Discrimination." The form begins with this notice to the complaining party:

> You recently indicated a desire to withdraw your charge. In order to initiate such action, furnish the information below and return this form in the enclosed envelope. *Since a request for withdrawal of a charge is subject to the approval of the Commission,* your request will be considered and acted upon when received by this office. Please note that the Commission is still prepared to proceed with your case if you so desire.

(Emphasis added.) The form continues with the following acknowledgement, which the complaining party adopts by signing and filing the form:

> I am aware that the Federal Government protects my right to file a complaint and have been advised that it is unlawful for any person covered by Title VII to threaten, intimidate or harass me

because I have a complaint. I have not been coerced into requesting this withdrawal.

Mrs. Whitehead wrote in the blank lines following this acknowledgement the following reasons for her request to withdraw the charge:

> Meeting with Management resulted in a mutual understanding and a definite program for immediate promotion. A training path has been established for future upward mobility.

The form was signed by Mrs. Whitehead and dated March 22, 1977. The EEOC's only response was to send to Reliance a letter, dated April 5, 1977, the text of which read as follows:

> Some time ago you were notified that a charge with the file number shown above had been filed against your establishment.
>
> *This office has administratively closed the cited charge, without prejudice to any party and with no determination, whatever, as to the charge's merits.* So far as is known at this time, no further action will be taken on it.
>
> *There is a remote chance that this charge will be re-opened in the future.* Should this happen, you will be immediately notified.

(Emphasis added.) There was no indication on the letter itself that a copy was being sent to Mrs. Whitehead, and she was very uncertain in her deposition testimony as to whether she had received a copy of this or some similar letter; she had been unable to find among her papers any written notice to the effect that the EEOC was "administratively closing" the charge, and she does not recall when she first learned of the EEOC's decision.

Following Mrs. Whitehead's request to withdraw the charge and the EEOC's decision to "administratively close" the charge, Reliance apparently took certain steps in accordance with the agreement it had reached with Mrs. Whitehead. In February 1978, however, Mrs. Whitehead was again passed over for promotion to the supervisorship of her local department, although this

time the vacancy was filled by another female employee, who was transferred from another of Reliance's branch offices. Mrs. Whitehead for the first time consulted a lawyer. He requested and received from the EEOC a right to sue notice with regard to the original discriminatory act in February 1977. The EEOC sent Reliance a copy of the right to sue notice, along with a letter which explained that under established EEOC procedures, all information relating to the original charge had been destroyed because the charge had not been reopened within six months of the date on which it was administratively closed. The letter notified Reliance that "the Commission is reopening this matter for the express purpose of honoring [Mrs. Whitehead's] request for a Notice of Right to Sue, in that the charge itself cannot be administratively processed due to its destruction." Copies of the letter were sent to Mrs. Whitehead and her counsel. As far as can be determined from the record on this interlocutory appeal, the EEOC has had no connection with the litigation other than reopening the charge so that it could issue the right to sue notice; there is no indication that the EEOC has reinstituted proceedings or begun its own investigation with regard to the original charge.

### B. The Decision of the Court Below

In an unpublished memorandum decision dated September 8, 1978, the court below denied Reliance's motion to dismiss for lack of jurisdiction. The court noted that Mrs. Whitehead had complied with the prerequisites stated in *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136 (5th Cir. 1971), in that she had filed a timely complaint with the EEOC and had received the statutory notice of her right to sue. The court pointed out that inaction by the EEOC, either in attempting conciliation, or in making a determination as to whether there is reasonable cause to believe Title VII has been violated, is not a bar to a private party's suit. The court held that a charging party has a vested right to receive a right to sue notice upon the expiration of 180 days after the filing of the charge. It

also concluded that there was a dispute as to the terms of the agreement reached by Mrs. Whitehead and Reliance, and therefore declined to dismiss the suit on grounds that Mrs. Whitehead was barred by virtue of the agreement.

On November 14, 1978, however, the court agreed to reconsider its ruling of September 8, 1978. The court examined Reliance's argument that allowing Mrs. Whitehead to sue in these circumstances would violate this court's holding in *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977), by allowing the charging party to determine the date upon which the 90–day limitation period for filing suit after receiving a right to sue notice would begin to run. The court characterized the charge as having been effectively withdrawn by Mrs. Whitehead; it noted, however, that there was nothing in the record to indicate that she was made aware, by the EEOC or otherwise, that she could not sue on the basis of this "withdrawn charge" if Reliance failed to live up to the agreement that led to the withdrawal, or that her right to sue would end upon the expiration of a specific period of time. The court agreed with Reliance that the right to sue upon a withdrawn charge could not be maintained indefinitely, "because if such were the case no employer would ever attempt to make a voluntary settlement." The court held, however, that the EEOC should keep the file open for 180 days after receiving a withdrawal request, during which period the charging party could request further administrative action or a notice of right to sue; after that 180–day period the file could be destroyed and the right to sue would be terminated. Because Mrs. Whitehead claimed to have been misled by the EEOC forms and personnel into believing that she could reopen her charge at any time, the court made its ruling prospective only, so that it would not be applied to defeat Mrs. Whitehead's cause of action. The court also included the requisite certification for interlocutory appeal under 28 U.S.C. § 1292(b) (1976), and this court subsequently granted Reliance's appli-

cation for permission to file an interlocutory appeal.[1]

## II. TIMELINESS AND THE STATUTORY SCHEME FOR PRIVATE SUITS TO ENFORCE TITLE VII RIGHTS: APPLICATION TO THIS CASE

### A. The Circumstances in Which a Private Title VII Action May Be Brought

By its requirement in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1976), that the aggrieved party file with the EEOC an administrative charge as a prerequisite to bringing a private suit, Congress intended that the EEOC be given time to conciliate claims. Though the 1972 amendments to Title VII empower the EEOC to bring its own civil enforcement actions, "the private right of action remains an essential means of obtaining judicial enforcement of Title VII." Alexander v. Gardner–Denver Co., 415 U.S. 36, 45, 94 S.Ct. 1011, 1018, 39 L.Ed.2d 147 (1974). The statute contemplates two distinct situations in which a private party is authorized to bring suit in federal district court under Title VII.

The first situation is when the EEOC has determined that its administrative processes with respect to a given charge are at an end. This may occur when the EEOC has made a finding that it lacks jurisdiction, or that there is no reasonable cause to believe Title VII has been violated; or it may occur after a finding of cause, failure of conciliation, and determination that the case will not be litigated by the EEOC. The statute provides:

> If a charge filed with the Commission ... is dismissed by the Commission, ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge .....

42 U.S.C. § 2000e–5(f)(1) (1976). The EEOC has promulgated regulations that set out the circumstances in which a charge may be dismissed.[2] The regulations also provide for the mandatory issuance of a right to sue notice following the EEOC's disposition of a charge after a finding of reasonable cause and a Commission determination not to file suit itself.[3] The statute

---

**1.** The district court noted and Reliance emphasizes that Mrs. Whitehead has filed an additional Title VII charge alleging that the company's failure to promote her to the supervisory position in February 1978 constituted retaliation for her earlier charge. Reliance argues that this second charge will afford Mrs. Whitehead an adequate remedy for any complaints against the company. Reliance, however, may have had any number of nonretaliatory reasons for failing to promote Mrs. Whitehead in 1978, and such defenses to the second Title VII charge do not preclude the possibility that Reliance was in fact violating Title VII when it denied her the promotion in 1977. The pending second charge, therefore, does not guarantee Mrs. Whitehead any remedy for the earlier discrimination.

**2.** 29 C.F.R. § 1601.19 (1978). The regulations provide for dismissal: (1) when the EEOC determines from the face of the charge or after investigation that the charge is not timely filed or otherwise fails to state a claim under Title VII; (2) when the EEOC determines after investigation that there is not reasonable cause to believe that Title VII has been violated; (3) in certain circumstances in which the charging party refuses to cooperate; (4) when the charging party cannot be located; and (5) when the respondent has made a written, specific settle-

ment offer that would afford full relief and the charging party has failed to accept that offer within 30 days. The regulations specifically require that notice of disposition under any of these alternatives be sent to the charging party and the respondent, and that appropriate right to sue notices be issued pursuant to § 1601.28.

**3.** 29 C.F.R. § 1601.28(b) (1978). One treatise summarizes the current EEOC regulations as follows:

> [I]n cases where the Commission finds cause [to believe that Title VII has been violated], the Commission, absent a request, will not issue notices of right to sue prior to determining that it will not bring suit. On the other hand, the regulations expressly provide that the Commission will issue such notices upon its disposition of a charge: at dismissal; when the Commission enters into a conciliation agreement to which a person claiming to be aggrieved is not a party; or upon determining not to sue. In addition, the regulations now specifically define the content of a notice of right to sue as including, among other things, "authorization to the aggrieved person to bring a civil action."

B. Schlei & P. Grossman, Employment Discrimination Law 236 (1979 Supp.) (footnotes omit-

commands that "[t]he Commission shall make its determination on reasonable cause [to believe Title VII has been violated] as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge ....." 42 U.S.C. § 2000e–5(b) (1976).

The second situation in which a private party is justified in bringing suit under Title VII is also contemplated by the statute:

> [I]f within one hundred and eighty days from the filing of [a charge with the EEOC by a private party] ... the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge .....

42 U.S.C. § 2000e–5(f)(1) (1976). This option was provided by Congress when it granted the EEOC the power to initiate civil actions if its conciliation efforts failed. While the primary burden of enforcing Title VII rights was intended to fall on the EEOC, the Congress preserved for the individual claimant who was dissatisfied with the progress of the administrative process the right to sue "as a means by which he might extricate himself from the 'quagmire which occasionally surrounds a case caught in an overloaded administrative process.'" *Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301, 1305 (8th Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976) (quoting legislative history). The

EEOC has also promulgated regulations authorizing the issuance of a right to sue notice in this situation.[4]

> [A] natural reading of [section 2000e–5(f)(1)] can lead only to the conclusion that it simply provides that a complainant whose charge is not dismissed or promptly settled or litigated by the EEOC may himself bring a lawsuit, but that he must wait 180 days before doing so. After waiting for that period, the complainant may either file a private action within 90 days after EEOC notification or continue to leave the ultimate resolution of his charge to the efforts of the EEOC.

*Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 361, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 (1977). *See also id.* at 369 n.25, 97 S.Ct. at 2456 n.25; *Turner v. Texas Instruments, Inc.*, 556 F.2d 1349, 1352 (5th Cir. 1977). "Neither [section 2000e–5(f)(1)] nor any other section of the Act explicitly requires the EEOC to conclude its conciliation efforts and bring an enforcement suit within any maximum period of time." *Occidental Life*, 432 U.S. at 360, 97 S.Ct. at 2451. "A plaintiff cannot be penalized for choosing to forgo [his alternative of suing under section 2000e–5(f)(1) before the EEOC has completed its administrative processes] and electing instead the legislatively and judicially favored method of relying on the administrative processes of the EEOC." *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1257 (5th Cir. 1979), *adopted in part and modified on other grounds on rehearing*, 619 F.2d 459 (5th Cir. 1980) (en banc). *See also Truvillion v. King's Daughters Hospital*, 614 F.2d 520,

---

ted; emphasis added) (citing 29 C.F.R. § 1601.-28 (1978)).

4. 29 C.F.R. § 1601.28 (1978) provides in part:

(a) *Issuance of notice of right to sue upon request.* (1) When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission shall promptly issue such notice as described in § 1601.28(e) to all parties, *at any time after the expiration of one hundred*

eighty *(180) days from the date of filing of the charge with the Commission .....*

(2) ... [T]he Commission may issue such notice as described in § 1601.28(e) with copies to all parties, at any time prior to the expiration of 180 days from the date of filing the charge with the Commission; provided, that [one of certain EEOC officials] has determined that it is probable that the Commission will be unable to complete its administrative processing of the charge within 180 days from the filing of the charge and has attached a written certificate to that effect. (Emphasis added.)

526 (5th Cir. 1980); *Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 671, 62 L.Ed.2d 648 (1980).

Thus, there are two distinct situations in which a private party is authorized to bring a Title VII action in the federal courts. The first is when he is notified that the EEOC has completed its administrative processes and decided, for whatever reason, not to file suit. The second is when, though the EEOC has not indicated that its efforts have concluded, the private party has waited more than 180 days from the filing of the charge and is dissatisfied with the progress made by the EEOC in processing his charge.

### B. The 180–Day Period for Filing a Charge and the Effect of a Request for Withdrawal

The statute requires that a charge of employment discrimination be filed within 180 days after the alleged unlawful practice occurred:

> A charge ... shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter .....

42 U.S.C. § 2000e–5(e) (1976). We have uniformly held that filing a charge with the EEOC within 180 days of the alleged discrimination is a prerequisite for a successful suit under Title VII.[5] *E. g., Nilsen v. City of Moss Point*, 621 F.2d 117, 121 (5th Cir. 1980); *Fowler v. Birmingham News Co.*, 608 F.2d 1055, 1056 (5th Cir. 1979); *Hamilton v. General Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980);

*McArthur v. Southern Airways, Inc.*, 569 F.2d 276, 277 (5th Cir. 1978) (en banc). There is no question in this case but that Mrs. Whitehead did file a charge with the EEOC within the statutory period of 180 days.

Reliance's chief argument is that there was no pending charge before the EEOC upon which a valid right to sue notice could be issued because Mrs. Whitehead withdrew her timely filed charge; her attempt to reopen this withdrawn charge, according to Reliance, can constitute no more than an untimely filing of a charge with regard to the events of February 1977. We believe that this argument rests on a mischaracterization of the facts of the case.

The statute nowhere provides for the withdrawal of a charge, but the EEOC has issued regulations that address, albeit in cursory fashion, this possibility:

> A charge filed by or on behalf of a person claiming to be aggrieved may be withdrawn only by the person claiming to be aggrieved and *only with the consent of the Commission*. The Commission hereby delegates authority to [various EEOC officials], or their designees, to grant consent to a request to withdraw a charge, other than a Commissioner charge, *where the withdrawal of the charge will not defeat the purposes of Title VII*.

29 C.F.R. § 1601.10 (1978) (emphasis added). Various courts have given full effect to this regulation or its predecessor, 29 C.F.R. § 1601.9 (1972), which simply provided that "[a] charge filed by an aggrieved person may be withdrawn only with the consent of the Commission." *See EEOC v. United States Fidelity & Guarantee Co.*, 414 F.Supp. 227, 246 (D.Md. 1976), *aff'd without opinion*, 538 F.2d 324 (4th Cir.), *cert. denied*, 429 U.S. 1023, 97 S.Ct. 641, 50 L.Ed.2d 624 (1976); *Voutsis v. Union Carbide Corp.*, 6 Fair Empl. Prac. Cas. (BNA) 964, 965 (S.D.

---

**5.** The question whether similar timeliness requirements under the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621 *et seq.* (West 1975 & 1980 Supp.), are prerequisites for subject matter jurisdiction in the federal courts is presently before this court en banc in *Coke v. General Adjustment Bureau*, 616 F.2d 785 (5th

Cir.), *vacated and en banc rehearing granted*, 622 F.2d 1226 (5th Cir. 1980). *See also Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979) (180–day period for filing Title VII employment discrimination charges with the EEOC is subject to equitable delay or interruption).

N.Y. 1973); *Allstate Insurance Co. v. EEOC*, 4 Fair Empl. Prac. Cas. (BNA) 645, 647 (S.D.N.Y. 1972). *Cf. EEOC v. McLean Trucking Co.*, 525 F.2d 1007, 1010 (6th Cir. 1975) (EEOC may continue to press suit notwithstanding acceptance of arbitration award and settlement of private action by charging party where EEOC had explicitly refused to consent to charging party's request to withdraw charge); *EEOC v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 & n.3 (5th Cir. 1975) (EEOC can still bring suit on charge despite the fact that charging party has settled) (citing regulation).

As section 1601.10 suggests, and as *McLean Trucking* and *Huttig Sash & Door* confirm, the EEOC may find that the broader purposes of Title VII require it to continue its efforts even after the charging party has been sufficiently satisfied that he requests withdrawal of the charge. Unfortunately, there is little in the regulations to indicate *when* the EEOC must consent to a request for withdrawal of a charge, or exactly what options are open to the EEOC when it receives such a request. Another regulation, 29 C.F.R. § 1601.20(b) (1978), indicates that the EEOC may facilitate a private settlement between the charging party and the respondent by permitting, pursuant to section 1610.10, the withdrawal of a charge.[6] This is especially appropriate in those circumstances when the terms of the settlement between the charging party and the respondent are conditioned on EEOC consent to the request for withdrawal. There are indications that, contrary to previous EEOC policies, the EEOC is now generally willing to accept any settlement acceptable to the parties, and will facilitate settlement by consenting to the withdrawal of a charge as part of that private settlement so long as the charging party's request for withdrawal was not procured by coercion or reprisal. *See* B. Schlei & P. Grossman, Employment Discrimination Law 209, 211, 215 (1979 Supp.); EEOC Compliance Manual § 7 & exhibits 7A–7E (CCH ¶¶ 341–358). This is certainly in keeping with Title VII's goals of voluntary compliance, conciliation, and settlement. Nonetheless, it is clear that the EEOC need not consent to a request for withdrawal of a charge, and that such a withdrawal request is not effective until the EEOC has given its consent. Reliance does not challenge, and we assume for purposes of this opinion, the validity of these regulations.

There is simply nothing in this record to suggest that the EEOC ever consented to Mrs. Whitehead's request that the charge be withdrawn. Nowhere in the record is there an explicit manifestation of such consent. To the contrary, the preprinted withdrawal request filed by Mrs. Whitehead expressly provided that "a request for withdrawal of a charge is subject to the approval of the Commission." The portion of the form marked "For EEOC Use Only" contains boxes labeled "approve" and "disapprove" with blanks for the date and the signature of the EEOC district director, but nothing has been written in this space. The EEOC's only response to Mrs. Whitehead's request was to "administratively close" the charge. This vague procedure is not provided for in the statute, and neither is it clearly contemplated by the regulations; but we cannot say that it is equivalent to consenting to the request for withdrawal. Further, the EEOC's letter to Reliance of April 5, 1977, expressly warned Reliance that the administrative closure was "without prejudice to any party and with no determination, whatsoever, as to the charge's merits," and that "there [was] a remote chance that this charge [would] be re–opened in the future." Though the EEOC's action was not altogether unambiguous (of which more later), we cannot read the facts of this case in the manner that Reliance, and indeed, the district court have characterized them.

Because we find that there has been no *effective* withdrawal, Reliance's first argument–*i. e.*, that a withdrawn charge is equivalent to a charge never filed–is not

---

**6.** Contrast this provision to 28 C.F.R. § 1601.-20(a) (1978), which deals with a negotiated settlement to which the EEOC is a party. Under that section, "[t]he Commission shall limit its undertaking ... to an agreement not to process that charge further."

properly before us, and we expressly reserve that issue for some future case in which it is properly presented. Neither do we pass upon the district court's novel proposal that the EEOC should and could retain the power to issue an effective notice of right to sue for a period of 180 days after the EEOC has consented to the charge's withdrawal.

### C. The 90–Day Period for Filing Suit in Federal Court

The statute also has been read to require as a prerequisite for a successful private suit under Title VII that that suit be filed in federal court within 90 days of receipt by the charging party of notice of his right to sue. This requirement has generated a great deal of case law in this and other circuits, usually in the context of a determination by the EEOC that its administrative processes are at an end and that the EEOC will not itself file suit in the charging party's behalf. This circuit[7] has taken the position that in this context, the 90–day limitations period begins to run upon receipt by the charging party of unambiguous notice that the EEOC's processes have terminated *and* that the EEOC has decided not to bring suit; the notice need not, however, specifically inform the charging party of his right to file suit within the 90–day limitations period. *E. g., Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 245 (5th Cir. 1980); *Crawford v. Western Electric Co.,* 614 F.2d 1300, 1307 (5th Cir. 1980); *Key v. Lumberjack Meats, Inc.,* 611 F.2d 602, 603 (5th Cir. 1980); *Hefner v. New Orleans Public Service, Inc.,* 605 F.2d 893, 895 (5th Cir. 1979), *cert. denied,* 445 U.S. 955, 100 S.Ct. 1639, 64 L.Ed.2d 231 (1980); *Prophet v. Armco Steel, Inc.,* 575 F.2d 579, 580 (5th Cir. 1978); *Page v. U.S. Industries,* 556 F.2d 346, 351, 354 (5th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978); *Turner v. Texas Instruments, Inc.,*

556 F.2d 1349, 1351 (5th Cir. 1977); *Huckeby v. Frozen Food Express,* 555 F.2d 542, 544–45 (5th Cir. 1977); *Zambuto v. American Telephone & Telegraph Co.,* 544 F.2d 1333, 1335 (5th Cir. 1977). The premise that underlies this rule is that until the charging party receives notice of the type described above, he is entitled to continue to rely upon the efforts of the EEOC. "The issue of whether plaintiffs can be precluded from bringing suit because they have not done so within 90 days of receipt of a Commission notice of failure of conciliation may now fairly be regarded as closed." B. Schlei & P. Grossman, *supra,* at 238 (1979 Supp.).

There is no question from the record in this case but that Mrs. Whitehead never received sufficient notice that the EEOC's processes had terminated and that it had decided not to file suit in her behalf. Even if–as is by no means certain from this record–she received a copy of the EEOC's letter to Reliance of April 5, 1977, that letter does not foreclose the possibility of further action by the EEOC; rather, it explicitly stated that there was a chance that the charge would be reopened in the future. Though in some cases we have found an "administrative closure" by the EEOC to indicate unambiguously that the EEOC's processes had terminated and that the EEOC had decided not to sue, *see, e. g., Hefner v. New Orleans Public Service, Inc., supra,* 605 F.2d at 895, this is simply not a case in which the charging party was clearly informed "that he could expect no further action from the EEOC, *i. e.,* that, as far as the EEOC was concerned, his charge was dismissed." *Id.* From Mrs. Whitehead's point of view, then, the EEOC had never consented to her request for withdrawal of the charge, and neither had it ever indicated that its administrative processes had ceased and that it had decided not to file suit on her behalf. Hers is in the second category of private suits that is dis-

---

7. *Compare, e. g., Lynn v. Western Gillette, Inc.,* 564 F.2d 1282 (9th Cir. 1977) (90–day limitations period does not begin to run until charging party receives letter specifically informing him of his right to sue), *with Shea v. City of St. Paul,* 601 F.2d 345, 348–50 (8th Cir. 1979) (stat-

utory notice triggers 90–day limitations period if it conveys knowledge that EEOC's administrative procedures have terminated and that charging party could not hope to receive any further administrative assistance from the EEOC).

cussed in part II–A of this opinion, *supra: i. e.,* she was a dissatisfied private party who had complied with the statutory requirement that she wait at least 180 days from the filing of the complaint with the EEOC before bringing an independent private action in federal court. She filed suit well within the 90–day limitations period that began to run upon her receipt of the requested right to sue notice. Therefore, Mrs. Whitehead is not barred by the statute's requirement that a private suit be filed in federal court within 90 days of receipt of the statutory notice.

Reliance argues strenuously that this case should be controlled by our holding in *Zambuto v. American Telephone & Telegraph Co., supra,* wherein we condemned the EEOC's former practice of allowing a charging party to determine the date from which the 90–day limitations period would begin to run by its use of a "two–tier" notification procedure. Under that procedure, the EEOC first notified the charging party that its administrative processes had ended and that it had decided not to file suit; simultaneously, however, it told the charging party that the 90–day limitations period would not begin to run until the charging party had requested and received a separate right to sue notice. After noting the components that were required for effective statutory notice, we held:

> The statutory plan is to keep claims fresh. When the aggrieved party knows EEOC has completed its efforts, the time for suit has come and the statute fixes its season as 90 days. This is a protection to the employer and is plainly there for its benefit alone. To the extent that EEOC has adopted a practice which places the commencement of this 90–day period within the claimant's power *by bifurcating the statutory notice,* it is an invalid procedure which is counter to the plain language of the statute and to the Congressional purpose undergirding it.

544 F.2d at 1335 (emphasis added; footnote omitted).

It seems likely in this case that the EEOC at some point made an internal decision that its administrative processes were at an end and that it would not sue. This conclusion is supported by the fact that the EEOC administratively closed the charge, and then destroyed the file on the charge when it had not been reopened within six months of the administrative closure. If that is so, then the EEOC has violated its statutory mandate by failing to send the required notice to the charging party that its processes were at an end and that it had decided not to sue. The EEOC is not a party to this appeal, and neither has it been subject to any discovery that appears in this record; we therefore simply do not know how the EEOC would characterize whatever happened here. However, even if the EEOC did violate its statutory mandate, Mrs. Whitehead should not be charged with knowledge of that fact, nor should Reliance benefit therefrom, given that the very nature of the violation was the failure to give the required notice. As the district court noted, we have been loath to visit the harsh effects of the EEOC's erroneous practices upon individual charging parties. *See, e. g., Zambuto,* 544 F.2d at 1335–36; *Page v. U.S. Industries, supra,* 556 F.2d at 351; *White v. Dallas Independent School District,* 581 F.2d 556, 562 (5th Cir. 1978) (en banc); *Bernard v. Gulf Oil Co.,* 596 F.2d 1249, 1254 (5th Cir. 1979), *adopted in part and modified on other grounds on rehearing,* 619 F.2d 459 (5th Cir. 1980) (en banc).

### III. CONCLUSION

For the foregoing reasons, we hold that upon the record before us on this interlocutory appeal, it cannot be said that Mrs. Whitehead failed to comply with the prerequisites for maintaining her Title VII action in federal court. She filed a charge of employment discrimination within the required 180 days of the alleged discriminatory act; and she filed her suit in federal court within 90 days of her receipt of the statutory notice of right to sue.

The ruling of the district court in denying the motion to dismiss is

AFFIRMED.